**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF BERESFORD, SOUTH DAKOTA, Plaintiff,**

v.

**AETNA INSURANCE COMPANY, OF HARTFORD, CONNECTICUT, Defendant.**

**Civ. 67–118S.**

United States District Court
D. South Dakota, S. D.
Aug. 19, 1969.

---

5. See, e. g., N.Y. Times, Jan. 6, 1969, at 26, col. 2; Jan. 11, 1969, at 39, col. 4; Feb. 21, 1969, at 1, col. 4; Mar. 27, 1969, at 65, col. 2.

T. R. Johnson, of Danforth, Danforth, & Johnson, Sioux Falls, S. D., for plaintiff.

Robert C. Heege, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for defendant.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

This is a diversity action whereby the First Federal Savings & Loan Association of Beresford, South Dakota, (hereinafter called First Federal), which at all times herein mentioned was and is a corporation organized and existing under and by virtue of the laws of the United States relating to Federal Savings and Loan Associations, with its home office located in the County of Union in the State of South Dakota, as plaintiff, seeks judgment on a standard blanket bond against the Aetna Insurance Company of Hartford, Connecticut, (hereinafter called Aetna), a corporation incorporated under the laws of the State of Connecticut and authorized to do business in the State of South Dakota, but having its principal place of business in a State other than South Dakota, as defendant. The amount in controversy exceeds $10,000.00.

The plaintiff, First Federal, made a $21,000.00 loan to C. H. and Phyllis Point on November 12, 1963. The security for this loan was a mortgage on improved lot No. "2" in a subdivision owned by the Points. The property was examined by the President of First Federal, Mr. Peterson, on three different occasions and by the then Secretary-Treasurer, Mr. Lauxman, on two separate occasions. On one of these inspections Mr. Point personally showed the property to them and stated that the proceeds of the loan were to be paid to the contractor, Tabbert Construction Company. On the loan application Mr. Point described the property as "lot 2, Block 1, Knob Hill Addition, 208 E. 35th Street." Point tendered to First Federal a mechanic's lien waiver, signed by Point forging the name of the contractor. The mechanic's lien waiver, dated November 12, 1963, described the property as follows: "208 East 35th Street, Lot 2, Block 1, Knob Hill Addition, Sioux Falls, South Dakota." On the 14th of November, a first mortgage also dated November 12, 1963, was recorded by First Federal against "Lot 2, Block 1, Knob Hill Addition to the City of Sioux Falls, according to the recorded plat thereof."

In January of 1967, the monthly check which was due from Mr. Point was late, and when received and cashed, it was returned "account closed." Mr. Point was contacted about the check, and he came into First Federal's offices and related to them that he was now out of business and had turned in his real estate license. He then showed the officers of First Federal how he had changed the lot numbers on the plat of the abstract so that the existing mortgage was on an unimproved lot. Mr. Point admitted that his scheme was to deprive the association of ever having proper security for the mortgage. His alteration consisted of changing the lot numbers as follows: Lot #1 was changed to Lot #4, Lot #2 was changed to Lot #3, Lot #3 was changed to Lot #2, and Lot #4 was changed to Lot #1. The balance due on the loan is $19,802.22. Mr. and Mrs. Point are insolvent.

Aetna issued a blanket bond to First Federal on May 25, 1964, providing that coverage was to be effective at time of discovery. The original claim by the plaintiff was made under Insuring Agreement (E):

"Any loss of property through any other form of fraud or dishonesty by any person or persons whether employees or not."

The defendant denied recovery under exclusion clause 2(d):

"Any loss the result of the complete or partial non-payment of or default upon any loan made by or obtained from the insured, whether procured in good faith or through trick, artifice, fraud or dishonesty, *except when covered by insuring* Agreement (A) or (D)." (Emphasis supplied)

Insuring Agreement (A) concerns the action of employees and would not apply here. However, Insuring Agreement (D) reads as follows:

"Any loss through forgery or alteration of, on, or in any instrument."

The original liability under the policy was reduced by rider from $210,000.00 to $25,000.00. Such rider also attached an additional insuring agreement which was to be an exception to the loan exclusion clause, which rider provides:

"Any loss through the insured's having, in good faith and in the course of business in connection with any loan, accepted or received or acted upon the faith of any real property mortgages, real property deeds of trust or like instruments pertaining to realty or assignments of such mortgages, deeds of trust or instruments which prove to have been *defective by the reason of the signature thereon* of any person having been obtained through trick, artifice, fraud, or false pretenses or the signature on the recorded deed conveying such real property to the mortgagor or grantor of such mortgage or deed of trust having been obtained by or on behalf of such mortgagor or grantor through trick, artifice, fraud, or false pretenses." (Emphasis supplied)

Testimony introduced at the trial stated that First Federal relied upon the Mechanic's Lien Waiver (which was forged by Point) in the decision to grant the loan to Point. The Court feels that such reliance would ordinarily be made, and that such a lien waiver ordinarily required would be quite logical when one considers SDCL 1967, 44-9-7 *Attachment and taking effect of lien—Preference over other encumbrances,* which provides:

All such liens as against the owner of the property shall attach and take effect from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement, *and shall be preferred to any mortgage or other encumbrance not then of record,* unless the lien holder had actual notice thereof. (Emphasis added)

The effect of the above statute is that such a lien as the Tabbert Mechanic's Lien would take preference over the First Federal mortgage, had such a real lien existed and a waiver not been given. This would certainly substantiate First Federal's claim of reliance upon the Me-

chanic's Lien Waiver, a forged instrument, in its decision to grant the Point loan. Other courts have held that a Mechanic's Lien is an instrument. (State ex rel. Lyons v. Phillips, 157 Ind. 481, 62 N.E. 12).

This Court agrees that a Mechanic's Lien is an instrument and finds that the waiver of such a lien is also an instrument within the terms of the insurance contract involved herein.

Accordingly, Aetna is liable on its blanket bond for the loss sustained by First Federal in the sum of $19,802.22, plus interest from February 3, 1967, and costs of said action, which loss the Court finds was sustained by First Federal by reason of the reliance by First Federal on the admittedly forged receipt and waiver of mechanic's lien rights.

The Court, however, finds that Aetna's refusal to pay the full amount of such loss was not vexatious or without reasonable cause under SDCL 1967, 58-12-3, and therefore makes no allowance for attorney fees.

The foregoing memorandum decision constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Rules of Civil Procedure.